**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
Fax (410) 962-3630

February 1, 2013

LETTER TO COUNSEL:

RE:   *Bruce Lang v. Michael Astrue, Commissioner of Social Security Administration*;
Civil No. TJS-11-1909

Dear Counsel:

On July 13, 2011, the Plaintiff, Bruce Lang, petitioned this Court to review the Social Security Administration's final decision to deny his Disability Insurance Benefits and Supplemental Security Income benefits. (ECF No. 1). The parties have filed cross-motions for summary judgment. (ECF Nos. 14, 16). These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] (ECF Nos. 6, 7). I find that no hearing is necessary. Local Rule 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

The Plaintiff, Bruce Lang ("Mr. Lang") filed his claim on April 22, 2008 alleging disability due to right leg amputation, leg and back pain, and depression. (Tr. 53, 78, 107). Mr. Lang's claims were denied initially on August 22, 2008 and on reconsideration on May 18, 2009. (Tr. 57-60, 61-64, 65-66). A hearing was held before an Administrative Law Judge ("ALJ") on August 20, 2010. (Tr. 22-43). On November 23, 2010, the ALJ determined that Mr. Lang was not disabled under the Social Security Act. (Tr. 13-21). The Appeals Council denied Mr. Lang's request for review (Tr. 1-3), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Lang suffered from the severe impairments of a leg amputation and affective disorder. (Tr. 15-16). The ALJ determined that Mr. Lang's impairments did not meet or equal the regulatory listings. (Tr. 16-17). The ALJ determined that Mr. Lang retained the residual functional capacity ("RFC") to:

---

[1] This case was originally assigned to the Honorable Paul W. Grimm, who is now a United States District Judge. On December 6, 2012, this case was reassigned to Magistrate Judge Stephanie A. Gallagher. On December 21, 2012, this case was reassigned to the undersigned.

1

perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that claimant is limited to unskilled work with no climbing, crouching, crawling, kneeling, or exposure to hazards.

(Tr. 17-18).

Based on Mr. Lang's RFC and the vocational expert's ("VE") testimony that his past work was classified as medium, skilled work, the ALJ found that Mr. Lang was not capable of performing past relevant work. (Tr. 20). Ultimately, the ALJ determined that considering Mr. Lang's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 20). After detailing the findings, based on the record and the testimony, the ALJ found that Mr. Lang was not disabled within the meaning of the Social Security Act. (Tr. 21).

Mr. Lang, in his motion for summary judgment, contends that he is disabled within the meaning of the Social Security Act. Mr. Lang makes several arguments that will be addressed in turn: (1) that a remand is required because the administrative record lacks certain jurisdictional documents, including the applications for Disability Insurance Benefits and Supplemental Social Security benefits; (2) that the ALJ should have decided this case in his favor at step three of the five-step sequential evaluation process; (3) that the ALJ failed to follow the treating physician rule; (4) that the ALJ asked an improper hypothetical question to the vocational expert; and, (5) that the ALJ's decision is not based on substantial evidence and improperly applies the law. The Commissioner has responded to each argument.

First, Mr. Lang suggests that because certain records are missing from the record (his application for Title II benefits and his application for Supplemental Security Income benefits), the case must be remanded. (ECF No. 14 at 2 n.3). The absence of these applications, however, is not material to this Court's review of whether the ALJ's decision is supported by substantial evidence and applies proper legal standards. *See* 42 U.S.C. § 405(g). Furthermore, Mr. Lang has failed to articulate any prejudice to him from the absence of the applications from the record, and this Court is unable to conceive of any prejudice he might suffer from the absence of the applications. This argument is without merit.

Mr. Lang next argues that the ALJ should have decided, at step three of the five-step sequential evaluation process, that Mr. Lang's leg amputation met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P.[2] Specifically, Mr. Lang points to Medical Listing 1.05B, which lists:

---

[2] At step three, the ALJ must determine whether the claimant's impairments meet or medically equal the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant's impairments meet or medically equal the criteria in the listings, and meet the duration requirement, 20 C.F.R. §§ 404.1509 and 416.909, the claimant is disabled. If not, the ALJ proceeds to the next step of the sequential evaluation process.

>	1.05 Amputation (due to any cause).
>
>	* * *
>
>	B. One or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months[.]

20 C.F.R. Part 404, Subpart P, App. 1 § 1.05B.

Here, the determinative question is whether Mr. Lang has "stump complications" within the meaning of this listing. While "stump complications" are not defined by the regulations, the weight of the authority from federal courts is that a "stump complication" requires more than a poorly fitting prosthesis, and consists of a problem with a person's body that prevents the effective use of prosthesis for at least 12 months. *See Puckett v. Chater*, 100 F.3d 730, 733 (10th Cir. 1996); *DeChirico v. Callahan*, 134 F.3d 1177, 1181 (2d Cir. 1998). The ALJ determined that Mr. Lang did not have stump complications, but rather a broken prosthesis with cracked hinges. (Tr. 16). The ALJ further found that "[t]here was no real stump complication noted in the [medical] records." (Tr. 16) While Mr. Lang may be unable to use his prosthesis effectively, there is substantial evidence that this is because his prosthesis is broken, and that Mr. Lang did not have a stump complication. Mr. Lang's argument that he meets the listing because he has had difficulty with his prostheses over the years fails because the record indicates that he has had only minimal problems with his prostheses over the years. Furthermore, his current prosthesis causes him problems because it is broken, and not because of "stump complications resulting in medical inability" to use it. The ALJ's finding is supported by substantial evidence.

Mr. Lang next claims that the ALJ did not follow the treating physician rule. Mr. Lang argues that the ALJ relied "on the opinion of non-treating, non-examining sources" to the exclusion of the opinions of his treating physician, Dr. Mozhari. (ECF No. 14 at 19-20). The Commissioner argues that because Dr. Mozhari's opinion was inconsistent with other persuasive evidence in the record and because the opinion was based on a short treatment relationship, it is not entitled to controlling weight. (ECF No. 16-1 at 14).

The opinion of a treating physician is entitled to controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques and 2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 590; see also 20 C.F.R. § 416.927(d)(2). While treating source opinions on issues reserved to the Commissioner, such as determining a claimant's RFC, are not entitled to controlling weight, the ALJ must still evaluate all of the evidence in the case record to determine the extent to which the physician's opinion is supported by the record as a whole.

While the ALJ must generally give more weight to a treating physician's opinion, *see* 20 C.F.R. §§ 404.1527(d) and 416.927(d)(2), where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)(2). Specifically, an

ALJ may attribute little weight to a treating source opinion when it is unsupported, inconsistent with other evidence in the record, or based on a short term relationship. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) ("The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence[.]") The ALJ is also not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(e); SSR 96–5p, 1996 WL 374183. Pursuant to 20 C.F.R. § 416.927(f)(2)(ii), the ALJ is required to "explain in the decision the weight given to . . . any opinions from treating sources, nonteaching sources, and other nonexamining sources who do not work for [the Social Security Administration]."

Here, the ALJ rejected Dr. Mozhari's opinion[3] concerning whether Mr. Lang's conditions met the criteria established in the listings. The ALJ noted that Dr. Mozhari's opinion was not supported by medically acceptable diagnostic techniques, was inconsistent with other persuasive evidence in the record, and was based on a short-term treating relationship. (Tr. 16, 19). The ALJ properly rejected Dr. Mozhari's opinion. Dr. Mozhari had only been treating Mr. Lang since March 2010 (Tr. 16, 19, 247), but had nonetheless opined that Mr. Lang had been disabled since 2000 (Tr. 16), well before he began treating him, and without adequate medical documentation to provide this opinion.[4] The ALJ also properly found that Dr. Mozhari's opinion was inconsistent with other persuasive evidence in the record. Specifically, it was inconsistent with Dr. Moore's assessment that Mr. Lang could stand for two hours of an eight-hour workday and sit for six hours out of an eight-hour workday. (Tr. 157). It was also inconsistent with Dr. Honick's opinion that Mr. Lang could perform sedentary work without bending, stooping, or lifting. (Tr. 152).

In addition to Dr. Mozhari's opinion being based on a short-term treating relationship, and its inconsistency with other persuasive evidence in the record, Dr. Mozhari's opinion was not supported by detailed discussion or objective medical evidence. Dr. Mozhari's Medical Assessment Report provides only a cursory explanation for his opinions, and is generally inconsistent with Mr. Lang meeting the listings, or being unable to sit for six hours or stand for two hours. (Tr. 241-50). The ALJ properly rejected Dr. Mozhari's opinions because they are not well-supported. (Tr. 16, 19).

---

[3] Dr. Mozhari reported that Mr. Lang would be unable to sit for six hours out of an eight-hour workday, or stand for two hours out of an eight-hour workday. (Tr. 248). Dr. Mozhari also stated that Mr. Lang met the 1.04 and 1.05B listings because his right leg was amputated below the knee and he suffered from lower back pain. (Tr. 241).

[4] Dr. Mozhari first saw Mr. Lang in March 2010 and had last seen him in July 2010. (Tr. 247). Mr. Lang's treatment by Dr. Mozhari was far from substantial, and does not provide the "detailed, longitudinal picture" of his medical impairments that would be required to afford Dr. Mozhari's opinion greater weight. *See* 20 C.F.R. § 404.1527(d)(2) (2010) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.")

Next, Mr. Lang argues that the ALJ's hypothetical question to the VE was improper. The Commissioner employs vocational experts to offer evidence as to whether a claimant possesses the residual functional capacity to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c). The vocational expert may respond to a hypothetical question about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). A hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted).

Here, the ALJ asked the VE: "Assume for the purpose of this hypothetical, if I were to find the individual would be limited to a sedentary exertional capacity and unskilled work, are there any jobs such an individual could perform?" (Tr. 40). The VE responded by detailing several positions such a person could perform. Mr. Lang contends that because the ALJ's question failed to include Mr. Lang's additional limitations, such as an inability to climb, crouch, crawl, kneel, or be exposed to hazards, the question did not fairly set out all of his impairments. (ECF No. 14 at 21-22). While Mr. Lang is correct to note that the ALJ's hypothetical question did not properly account for all of his impairments, the ALJ accounted for this discrepancy. The ALJ noted that "[w]hile the hypothetical to the [VE] failed to mention the other postural and environmental limitations found above, the undersigned finds that these jobs would not require the performance of these activities." (Tr. 21).

The ALJ's determination that given, Mr. Lang's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform is supported by substantial evidence the proper application of the law. Social Security Ruling 96-9p provides:

> Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. . . . In general, few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards

SSR 96-9p, 1996 WL 374185 at *7, *9. The ALJ's determination is in accordance with this ruling.

In addition, the ALJ's determination is in accordance with the Dictionary of Occupational Titles ("DOT"), which identifies that climbing, crouching, crawling and kneeling activities are not present in sedentary work. DOT 529.666-014, 1991 WL 674633; DOT 209.587.010, 1991 WL 671797; DOT 789.687-174, 1991 WL 681292. To the extent that the ALJ's hypothetical

question to the VE was deficient, the ALJ cured the deficiency in his ruling by taking into consideration the additional exertional and environmental limitations of Mr. Lang. The ALJ's determination was proper and Mr. Lang's argument is without merit.[5]

Finally, Mr. Lang argues that the ALJ's decision is, in general, not based on substantial evidence and misapplies the law. (ECF No. 14 at 22). This argument is also without merit. With respect to the issue of Mr. Lang's "stump complications," the ALJ properly found that Mr. Lang's characterization of his stump complications was not credible. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints concerning their work performance limitations. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id*. After the claimant meets this threshold obligation, the ALJ must evaluate the "intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work." *Id*. at 595.

Mr. Lang testified that he experienced extreme pain in his stump and lower back that prevented him from walking. (Tr. 29-31). The ALJ noted that the treatment records, however, do not support Mr. Lang's testimony. (Tr. 18). The ALJ found that the treatment records indicate Mr. Lang was absent from his treating clinic for extended periods of time (Tr. 18, 228-32, 257-59). This is inconsistent with Mr. Lang's testimony that he had been treated at his clinic "[a]bout once every two months" since 2005. (Tr. 29). In addition, the treatment notes from May 2010 indicate that Mr. Lang had no chief complaints, and only reported general "back pain" and "intermittent irritation" at the site of the prosthesis. (Tr. 211). This record is inconsistent with Mr. Lang's testimony that his stump and lower back always caused extreme pain. (Tr. 29-31).

The ALJ found that while Mr. Lang's medical impairments could "reasonably be expected to cause the alleged symptoms, . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional impairment capacity." (Tr. 18). The ALJ followed the requirements set forth in *Craig*, 76 F.3d at 594, and his analysis details substantial evidence to support the credibility conclusion regarding Mr. Lang. Mr. Lang's argument to the contrary is without merit.

After reviewing the record, this Court finds that substantial evidence supports the ALJ's determination that Mr. Lang is not disabled within the meaning of the Social Security Act. Accordingly, for the reasons set forth herein, Mr. Lang's motion for summary judgment (ECF

---

[5] Likewise, Mr. Lang's argument that the hypothetical question was deficient because it failed to include additional impairments, such as headaches, chronic pain, mental impairments, severe arthritis and hypertension, is without merit. The ALJ concluded that Mr. Lang did not suffer from these impairments, and did not include them in his RFC determination. The ALJ properly chose not to present a hypothetical question that assumed the existence of conditions he did not find to exist. *See Eichelberger v. Astrue*, No. CBD-08-162, 2009 WL 2602360 at *9 (D. Md. Aug. 21, 2009) ("[T]he hypothetical question is limited to the ALJ's RFC assessment and does not need to include evidence which the ALJ does not find credible.")

No. 14) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 16) will be GRANTED. The Clerk is hereby directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such. An implementing Order follows.

                                        Sincerely yours,

                                        /s/
                                      Timothy J. Sullivan
                                      United States Magistrate Judge